IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHELLE ROACH and CHARLES O. ZEBLEY, )
    Plaintiffs, )
)
    vs. )
)
FRANK VERTERANO and VERTERANO & MANOLIS )
    Defendants. )

Civil Action No.: 14-947
Magistrate Judge Robert C. Mitchell

# MEMORANDUM OPINION[1]

## I. INTRODUCTION

Presently before the Court is Defendants' Frank Verterano and Verterano & Manolis' Motion to Dismiss Plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and/or Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, Defendants' Motion to Dismiss is granted and Plaintiffs' Complaint is dismissed with prejudice.

## II. BACKGROUND

The instant action arises from a legal malpractice claim by Plaintiffs, Michelle Roach ("Plaintiff Roach") and Charles O. Zebley ("Trustee Zebley") against attorney Frank Verterano ("Attorney Verterano") and his law firm, Verterano & Manolis alleging damages arising from a claimed business loss of Plaintiff Roach's business, GRL Packaging, LLC ("GRL") and a denial of discharge to Plaintiff Roach in her personal bankruptcy proceedings.

---

[1] All parties have consented to jurisdiction before a United States Magistrate Judge, *see* Defs.' Consent to Magistrate Jurisdiction [ECF No. 6]; Pls.' Consent to Magistrate Jurisdiction [ECF No. 11]; therefore, the Court has the authority to decide dispositive motions, and to eventually enter final judgment. *See* 28 U.S.C. § 636, *et seq.*

Plaintiff Roach hired Attorney Verterano and his law firm to represent her with legal matters involving the sale of her personal residence, which was over-collateralized, and a personal discharge in bankruptcy for any remaining balances on the mortgages on the property and any other unsecured debt she had incurred to enable her to continue operating her packaging brokerage company, GRL Packaging, LLC. Plaintiff Roach was president and sole shareholder of GRL and operated the company from her personal residence.[2]

In or about July 2012, Attorney Verterano advised Plaintiff Roach to file two bankruptcy petitions under Chapter 7 of the Bankruptcy Code, one on behalf of herself, and one on behalf of GRL. He advised that it was legal to continue conducting the corporate business of GRL after a Chapter 7 bankruptcy petition had been filed, GRL could retain all of its assets and that GRL's corporate debts would be discharged at the conclusion of the bankruptcy. On or about July 12, 2012, Plaintiff Roach emailed Attorney Verterano to confirm that she could continue to operate GRL after the Chapter 7 bankruptcy was filed on its behalf and that she did not have to discontinue her business operations permanently. Attorney Verterano responded on July 31, 2012 confirming that she was filing both a personal and business Chapter 7 bankruptcy, that filing the business Chapter 7 bankruptcy would not result in shutting down GRL and that business transactions would be treated "as if the petition was not filed." Comp. [ECF No. 1] at ¶ 11. He also advised her that GRL's debt obligation to PNC Bank, the only corporate debt, would be discharged as to GRL and as to her personally and the discharge would be forever and final.

On or about October 31, 2012, Attorney Verterano filed Chapter 7 bankruptcy petitions

---

[2] GRL was a packaging company which Plaintiff Roach obtained custom packaging orders from corporate customers, arranged to have those ordered filled by packaging suppliers and had the packaging shipped directly to the customer. The customer would remit payment to GRL who in turn paid the supplier for the materials and GRL would retain the difference as profit. GRL had virtually no permanent assets, but maintained a corporate bank account which often had substantial assets and accounts receivable depending on the business cycle.

in the United States Bankruptcy Court for the Western District of Pennsylvania on behalf of Plaintiff Roach and on behalf of GRL. Attorney Verterano listed GRL's bank account as having a balance of $187.60 on the schedules when Plaintiff Roach informed him that the bank account had a balance of $24,000.00 at the time the petition was filed. Attorney Verterano did not claim any corporate assets to be exempt under Schedule C of the GRL bankruptcy, but advised Plaintiff Roach to continue using those assets after the bankruptcy was filed. Upon her attorney's advice, Plaintiff Roach continued operating GRL and transferred funds from the GRL corporate account to pay creditors and draw living expenses for herself.

On or about November 6, 2012, Plaintiff Charles O. Zebley, ("Trustee Zebley") who had been appointed as trustee in both the Roach and the GRL bankruptcies, contacted Attorney Verterano and instructed him to have Plaintiff Roach remit $1,500.00 representing the "cash" Attorney Verterano listed on the corporate bankruptcy petition. Plaintiff Roach remitted the $1,500.00 to Trustee Zebley. In an email exchange between Plaintiff Roach and Attorney Verterano, Plaintiff inquired whether she would need more money for the Meeting of Creditors ("MOC"), to which Attorney Verterano replied that she would not need additional money for the MOC.

The MOC was held on December 28, 2012 before Trustee Zebley for both the Roach and the GRL bankruptcies. During the meeting, Attorney Verterano informed Trustee Zebley that the purpose of the GRL bankruptcy was to discharge corporate debt. Trustee Zebley informed Attorney Verterano that corporate debt is not discharged in a corporate bankruptcy and demanded that the balances in the corporate bank accounts, listed as $187.60 and $223.86 to be turned over to him. Attorney Verterano informed Trustee Zebley that those amounts were no longer in the accounts, as GRL had continued conducting business after the Chapter 7

bankruptcy petition had been filed on October 31, 2012. Trustee Zebley informed Plaintiff Roach that it was illegal to continue to operate a corporation after filing a Chapter 7 bankruptcy and ordered Plaintiff Roach to immediately cease doing business and turn over all corporate assets and to provide an accurate accounting of the corporate bank account as of October 31, 2012, to account for all accounts receivable due to the corporation as of that day and to account for any possible preferential transfers. Attorney Verterano responded that it was his fault that the corporate bankruptcy was filed because he assumed that the corporation could remain in business after filing bankruptcy and stated that he would pay for any damage done as a result of this error. Further, he informed Trustee Zebley that he would file a "Motion to Withdraw" the corporate bankruptcy. At the conclusion of the meeting, the parties and Trustee Zebley agreed that GRL would immediately cease doing business and that Attorney Verterano would file amended schedules accounting for the corporate assets as of October 31, 2012.

In January 2013, the GRL bankruptcy schedules were amended to accurately reflect the corporate assets of GRL as of October 31, 2012. Plaintiff Roach began to establish a new corporation in Arizona and ceased conducting all business activities involving GRL. On January 13, 2013, Attorney Verterano advised Plaintiff Roach to continue conducting business as GRL because he was going to file a motion to dismiss the GRL bankruptcy. He also informed her that using receivables from GRL to fund another business constituted a criminal and fraudulent act. On January 25, 2013, Attorney Verterano filed a motion to dismiss case in the GRL bankruptcy.

On February 22, 2013, Trustee Zebley reconvened the Meeting of Creditors on the GRL bankruptcy. Trustee Zebley noted that the schedules had been amended to show a balance of $22,858.18 in the GRL bank accounts on October 31, 2012 and the accounts receivable and potential preferential transfers had been accounted for. Trustee Zebley noted that he had told

Plaintiff Roach to shut down GRL and how to do it. Plaintiff Roach responded that she was in the process of shutting down GRL and opening a new business, and testified that Attorney Verterano advised her that it would be a criminal or fraudulent act to use the accounts receivable from GRL to fund a new business and that she should continue to operate GRL, as the GRL bankruptcy was going to be dismissed. Attorney Verterano confirmed that this was accurate. Trustee Zebley instructed Plaintiff Roach to remit all of the GRL assets to him. Attorney Verterano replied that he filed a petition to withdraw the GRL bankruptcy and did in fact file a motion to dismiss the bankruptcy petition.

On March 4, 2013, Attorney Verterano filed a motion to withdraw his motion to dismiss. On March 6, 2014, one of the creditors, PNC Bank, filed an amended complaint to determine dischargeability against Plaintiff Roach. On April 23, 2013, Attorney Verterano filed motions to withdraw as counsel on Plaintiff Roach's personal and the GRL bankruptcies. On February 26, 2014, a trial was held on PNC's amended complaint.

On May 12, 2014, the Bankruptcy Court issued a decision as to PNC's amended complaint and determined that Plaintiff possessed the requisite intent to hinder, delay or defraud a creditor or an officer of the estate in utilizing and/or transferring funds from the corporate accounts post-petition in violation of 11 U.S.C. § 727(a)(2)(B) and (a)(7).[3] The Bankruptcy Court ultimately denied Plaintiff's discharge for her bad faith reliance on Attorney Verterano's

---

[3] Section 727(a)(2)(B) provides that a bankruptcy court shall enter a discharge in favor of the debtor unless "the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with the custody of property under this title, has transferred . . . or has permitted to be transferred . . . (B) property of the estate, after the date of the filing of the petition." 11 U.S.C. § 727(a)(2)(B). Additionally, Section 727(a)(7) provides that the bankruptcy court shall enter a discharge unless "the debtor has committed any act specified in paragraph (2) . . . of this subsection, or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider." 11 U.S.C. § 727(a)(7).

advice to remain in business after the December 28, 2012 MOC and explained:

> Upon review, the Court finds that any reliance on Attorney Verterano's representation that he would have GRL's case dismissed was not done in good faith and therefore, [Plaintiff Roach] cannot rely on advice of counsel to negate intent. At the MOC, Trustee Zebley explicitly instructed [Plaintiff Roach] to immediately cease operations as GRL. Given that [Plaintiff Roach] had, at this point, become aware of Attorney Verterano's significant misunderstanding of bankruptcy law in advising [Plaintiff Roach] to continue operating GRL post-petition, the Court finds that it would be unreasonable for the Debtor to forgo Trustee Zebley's instruction based on Attorney Verterano's representation; especially considering that Trustee Zebley stated at the MOC that he would likely oppose GRL's motion to withdraw and that the case must be treated as ongoing despite GRL's intention to withdraw. Moreover, [Plaintiff Roach] testified at the Adjourned MOC that although she was instructed to cease operating GRL, she did not because she would not have any money to fund a new business and GRL is her only source of income. Clearly, [Plaintiff Roach] understood the mandate of Trustee Zebley and the requirements of the Bankruptcy Code, but chose to ignore his instruction and the bankruptcy law in favor of her own personal interest. Accordingly, this Court finds that not only was ]Plaintiff Roach's] willful disregard for Trustee Zebley's instruction to cease operations as GRL, including his order to discontinue use of GRL's accounts, not done in good faith, but also that the circumstances of the case show that the transfers made following the MOC were done with the intent to hinder, delay, or defraud. Thus, [Plaintiff Roach's] post-petition transfers of GRL assets following the MOC support a denial of discharge pursuant to § 727(a)(2)(B).
> 
> Moreover, even if [Plaintiff Roach] could show that she was acting in good faith when she failed to discontinue operation of GRL, and thereby transferring its assets, following the MOC, [Plaintiff Roach's] behavior following the Adjourned MOC would also warrant a denial of discharge pursuant to 11 U.S.C. § 727(a)(2)(B). Specifically, at the Adjourned MOC, [Plaintiff Roach] was instructed by Trustee Zebley to immediately freeze GRL's bank account containing roughly $50,000.00 and turn over the proceeds. [Plaintiff Roach] admitted at trial that she did not, allowing outstanding checks to be drawn on the account and estate assets to be transferred. Consequently, [Plaintiff Roach's] failure to act on Trustee Zebley's instructions following the Adjourned MOC also supports denial of discharge under § 727(a)(2)(B).

Bankruptcy Court Memo. Op. [ECF No. 8-4] at 11-13.[4]

Plaintiff Roach filed an action in this Court on July 15, 2014 against Attorney Verterano and his law firm alleging professional negligence and breach of contract. Trustee Zebley was later added as a Plaintiff, as the trustee of GRL and Plaintiff Roach's bankruptcy estates, and alleged professional negligence and breach of contract claims on the estates' behalf.

On November 4, 2014, Defendants filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative, a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. Defs.' Mot. to Dismiss [ECF No. 13]. Defendants generally argue that Plaintiff Roach lacks standing to bring these claims, that Plaintiff Roach and Trustee Zebley are otherwise collaterally estopped from proving causation in their legal malpractice claims due to a final, adverse decision entered against Plaintiff Roach in the bankruptcy litigation, that Plaintiffs' legal malpractice claims are barred by the principles of public policy and *in pari delicto* doctrine, and that Plaintiffs' legal malpractice claims are otherwise insufficient under Pennsylvania law because Defendants' legal representation and advice in the GRL bankruptcy resulted in no loss as GRL would not have continued business operations regardless of Defendants conduct. Defs.' Mot. to Dismiss [ECF No. 13] ¶¶ 7-9.

### III. JURISDICTION

While Plaintiff claims that this Court has diversity jurisdiction under 28 U.S.C. § 1332(a)(1), diversity problems arise because both Trustee Zebley and Defendants are citizens of Pennsylvania. *See Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806) (complete diversity between all plaintiffs and defendants in an action is required for a court to have

---

[4] While the Bankruptcy Court denied Plaintiff Roach's discharge on the basis of post-petition transfers, it also found that Plaintiff Roach did not have the requisite intent to conceal assets nor did she hinder, delay or defraud PNC in making pre-petition transfers, because she was acting in good faith on the advice from her counsel. Compl. [ECF No. 1] at ¶ 22.

jurisdiction). While some courts have interpreted the Bankruptcy Act of 1898, 11 U.S.C. § 46 "to establish the 'special rule' that the citizenship of the bankrupt, instead of the trustee, is considered for diversity purposes[,]" *FirstBank of Puerto Rico v. AMJ, Inc.*, Civ. No. 2011-063, 2013 WL 4766538, at *2-*3 (D.V.I. Sept. 4, 2013), this "special rule" has not been consistently applied. *See In re Litig. Trust of MDIP, Inc.*, Civ. No. 03-779, 2005 WL 1242157, at *4 (D.Del. May 25, 2005) (refusing to apply the "special rule"); *Samson v. Allis-Chalmers Prods. Liab. Trust*, Civ. No. 90-0139, 1990 WL 87394, at *2 (E.D.Pa. June 21, 1990) (same); *Official Plan Comm. of Omniplex Communs. Grp., LLC v. Lucent Techs, Inc.*, 344 F.Supp.2d 1194, 1196 (same); *but see Carlton v. Baww, Inc.*, 751 F.2d 781, 787 (5th Cir. 1985) (applying the "special rule"); *FirstBank of Puerto Rico*, 2013 WL 4766838, at *4 (same); *Ramsbacher v. Fairchild Semiconductor Corp.*, Civ. No. 07-04, 2008 WL 899360, at *1 (E.D.Tex. Mar. 31, 2008) (same).

However, because the claim here is barred, the Court need not discuss the diversity issue.

### IV. STANDARD OF REVIEW

To survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The reviewing court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). Dismissal under Federal Rule of Civil Procedure 12(b)(6) is proper where the factual allegations of the complaint conceivably fail to raise, directly or inferentially, the material elements necessary to obtain relief under a legal theory of recovery. *Twombly*, 550 U.S. at 561 (citations omitted). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678

8

(2009) (citing *Twombly*, 550 U.S. at 555). Under this standard, civil complaints "must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal quotations omitted). A court in making this determination must ask "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." *Twombly*, 550 U.S. at 583 (quoting *Scheuer v. Rhoads*, 416 U.S. 232, 236 (1974) (internal quotations omitted)).

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may take into consideration "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Although a district court may not generally consider matters extraneous to pleadings when ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), it may consider documents <u>integral to or explicitly relied upon</u> in a complaint without converting the motion to dismiss into a motion for summary judgment. *West Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 97 (3d Cir. 2010); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis added).

## V.  DISCUSSION

Generally, Defendants move to dismiss Plaintiffs' Complaint for the following reasons: (1) Plaintiff Roach lacks standing to bring her claims; (2) Plaintiff Roach and Plaintiff Zebley are otherwise collaterally estopped from proving causation in their legal malpractice claims due to a final, adverse decision entered against Roach, an admitted fiduciary serving on behalf of GRL, in earlier litigation before the United States Bankruptcy Court for the Western District of Pennsylvania; (3) Plaintiffs' legal malpractice claims are also barred by the principles of public policy and the *in pari delicto* doctrine; (4) Plaintiffs' legal malpractice claims are legally

9

insufficient under Pennsylvania law because attorney-defendants' legal representation and advice in the GRL bankruptcy resulted in no loss, where, absent bankruptcy, GRL would have "died on the vine" and would not have continued operations, regardless of attorney-defendants' conduct. Defs.' Mot. to Dismiss [ECF No. 13] at ¶ 9. Because a finding that Plaintiffs are collaterally estopped from proving causation for their legal malpractice claims is dispositive, this subject will be addressed in the first instance.

1. Collateral Estoppel

Where a Rule 12(b)(6) motion raises the issue of collateral estoppel, a court must consider the prior judicial opinion to determine whether issue preclusion bars a plaintiff's claims. *M & M Stone Co. v. Pa.*, 388 F.App'x 156, 162 (3d Cir. 2010) (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 221 n. 3 (3d Cir. 2004)). Thus, "a prior judicial opinion constitutes a public record of which a court may take judicial notice." *Id*. On a motion to dismiss, a court may do so "only to establish the existence of the opinion, and not for the truth of the facts asserted in the opinion." *Id*. If a district court examines the transcript of the prior proceeding for fact finding purposes, this converts the motion to dismiss into one for summary judgment. *Id*. However, mere acknowledgment of a prior court's conclusions without considering the factual analysis of the court's decision does not convert a motion to dismiss into one for summary judgment. *Id*. To "disallow a court from recognizing the existence of other judicial opinions would thwart a defendant's right to raise issue preclusion in a motion to dismiss, and it would obviate the entire purpose of the doctrine." *Id*.

Issue preclusion, or collateral estoppel, prevents parties from relitigating issues already decided. As explained by the United States Court of Appeals for the Third Circuit,

> [t]he prerequisites for the application of issue preclusion are satisfied when: "(1) the issue sought to be precluded [is] the same

> as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment." *Burlington Northern Railroad Co. v. Hyundai Merch. Marine Co.*, 63 F.3d 1227, 1231-32 (3d Cir. 1995) (quoting *In re Graham*, 973 F.2d 1089, 1097 (3d Cir. 1992)); *see also Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). In its classic form, collateral estoppel also required "mutuality" – *i.e.*, that the parties on both sides of the current proceeding be bound by the judgment in the prior proceeding. *Parklane Hosiery*, 439 U.S. at 326-27, 99 S.Ct. 645. Under the modern doctrine of non-mutual issue preclusion however, a litigant may also be estopped from advancing a position that he or she has presented and lost in a prior proceeding against a different adversary. . . . For defensive collateral estoppel – a form of non-mutual issue preclusion – to apply, the party to be precluded must have has a "full and fair" opportunity to litigate the issue in the first action.

*Peloro v. U.S.*, 488 F.3d 163, 174-75 (3d Cir. 2007). Simply stated, issue preclusion compels a later court to honor a decision of a matter that was actually litigated. *Concert v. Northeast Foster Care Inc.*, 2012 WL 7188850, at *11 (M.D.Pa. Oct. 18, 2012) (citing *Dici v. Commonwealth of Pa.*, 91 F.3d 542 (3d Cir. 1997)).

Issue preclusion applies to the decisions of bankruptcy courts in a subsequent district court proceeding. *Katchen v. Landy*, 382 U.S. 323, 334, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966) ("The normal rules of res judicata and collateral estoppel apply to the decisions of bankruptcy courts."); *Bd. of Trustees v. Centra*, 983 F.2d 495, 505-06 (3d Cir. 1992) (preclusive effect of bankruptcy court order in district court proceeding); *Slawek v. Guiliano*, 1994 WL 551523, at *5 (E.D.Pa. Oct. 6, 1994) ("An adjudication by the Bankruptcy Court is entitled to the same verity as other judgments or decrees of courts of competent jurisdiction and it cannot be collaterally attacked as to matters as were necessarily decided therein."); *Cuneo v. Settlement Capital Corp.*, 2007 WL 2495135, at *4 (W.D.Pa. Aug. 31, 2007) (same). Additionally, bankruptcy court orders which allow or deny claims are final and appealable for collateral estoppel purposes. *In re*

*A & P Diversified Techs. Realty*, 467 F.3d 337, 341 (3d Cir. 2006).

Here, the crux of Defendants' argument is that Plaintiffs are collaterally estopped from proving causation of Plaintiff Roach's denial of discharge because the Bankruptcy Court denied Roach's discharged on the basis that she had the requisite intent to hinder, delay or defraud her creditors and the Bankruptcy Court outright rejected Plaintiff Roach's argument that she acted in reliance on her counsel's advice in making post-petition transfers of money from the GRL corporate account. Defendants argue therefore that because the Bankruptcy Court found that Plaintiff Roach possessed this requisite intent, and did not find that her reliance on Attorney Verterano was in good faith, Plaintiff Roach was the proximate cause for her denial of discharge. While no Pennsylvania court has addressed the legal effect of a bankruptcy court's rejection of a "reliance on legal counsel" defense in a subsequent legal malpractice action seeking to attribute the denial of discharge to the bankruptcy counsel's conduct, the Defendants argue that this Court should adopt the reasoning of the Supreme Court of Utah in *Harline v. Barker*, 912 P.2d 433 (Utah 1996) which extensively discussed this exact subject.

Plaintiffs respond that they should not be collaterally estopped from proving causation in this action because Trustee Zebley was not party to the bankruptcy case, was not in privity with Plaintiff Roach and he did not have a fair opportunity to litigate the bankruptcy action. Additionally, Plaintiff argues that the issues in the instant case are not the same as litigated in the bankruptcy matter, as the Bankruptcy Court "made no ruling on whether Verterano's conduct was the proximate cause of Roach's and the GRL estate's losses." Pls.' Br. in Op. to Def.'s Mot. to Dismiss [ECF No. 15] at 25. Plaintiff also attempts to distinguish *Harline* by arguing that the plaintiff-debtor in that case withheld and misrepresented information essential to the attorney's representation of him, and here, there is no indication that Plaintiff Roach withheld or

misrepresented anything to Attorney Verterano and cites to *Gorski v. Smith*, 812 A.2d 683 (Pa. Super. 2002) for the proposition that contributory negligence does not bar a plaintiff-client in a legal malpractice action.

Primarily, Plaintiffs' reliance on *Gorski* is not applicable in the collateral estoppel context. While in *Gorski*, the plaintiff brought claims for legal malpractice, it addressed the concept of a plaintiff-client's contributory negligence in the legal malpractice environment. *Id*. at 700-01. It does not address issue preclusion, and is therefore not applicable to the present discussion.

As previously mentioned, while no Pennsylvania court has opined on the matter, in *Harline*, the Supreme Court of Utah determined that where a bankruptcy court denies a discharge based upon the debtor's intent to hinder, delay or defraud his creditors, the debtor is collaterally estopped from attributing the denial of discharge to his bankruptcy attorney's conduct in a subsequent legal malpractice action.[5]

In *Harline*, the plaintiff-debtor hired the attorney-defendants in connection with a Chapter 11 bankruptcy. 912 P.2d at 435. Plaintiff-debtor gave his attorney a list of his creditors and assets and the attorney-defendant filed a bankruptcy petition on his client's behalf. After the bankruptcy was filed, plaintiff-debtor signed schedules of his assets and liabilities under penalty of perjury, and these documents were submitted to the bankruptcy court. After the bankruptcy was converted to a Chapter 7 proceeding, a hearing was held in which plaintiff-debtor's creditors objected to his bankruptcy discharge. The bankruptcy court found that plaintiff-debtor had failed

---

[5] The requisite elements for collateral estoppel under Utah law are indistinguishable from the elements under Pennsylvania law.

to disclose certain transfers of partnership interests and real property on his statement of affairs[6] and therefore denied plaintiff-debtor's discharge, as he violated 11 U.S.C. § 727(a) and liquidated a stock account with the intent to hinder, delay or defraud his creditors.[7]

The plaintiff-debtor appealed the bankruptcy court's decision denying his discharge, brought separate legal malpractice actions against his bankruptcy attorneys on this basis, and finally appealed the case to the Supreme Court of Utah. The high court determined that

> the doctrine of issue preclusion, or collateral estoppel, binds [plaintiff-debtor] to the bankruptcy court's factual determination that he transferred property with the intent to hinder, delay or defraud creditors[.] . . . Issue preclusion prevents the relitigation of issues that have once been adjudicated even though the claims for relief in the separate action may be different.

*Id*. at 442. After setting forth the legal standard for collateral estoppel, the court found that because plaintiff-debtor's good faith reliance on his bankruptcy attorney's advice, preparation of the statement and schedules was a plausible defense in the bankruptcy discharge hearing, and the plaintiff-debtor did in fact raise the good faith defense, he could not relitigate those issues in a legal malpractice claim. *Id*. at 442-43. The court explained that its unwillingness to reexamine this issue was because plaintiff-debtor's "sole aim" in the malpractice suit was "to have a jury reconsider the very issue that was decided by the bankruptcy court[,]. . . namely, whether

---

[6] The plaintiff-debtor specifically assigned two partnership interests that he did not disclose on his statement, answered "None" on the statement when asked whether he had made any transfer or other disposition of real or tangible personal property during the year immediately preceding the filing of his bankruptcy petition while he executed, without consideration, four quitclaim deeds conveying real property to his children, that he liquidated a stock account and failed to list it on his bankruptcy schedules, and used that money for personal expenses without authorization from the bankruptcy court, and that he did not reside at the address listed on his statement of affairs. *Harline,* 912 P.2d at 436.

[7] The Bankruptcy Court also found that plaintiff-debtor knowingly and fraudulently made a false oath by signing the statement of affairs and schedules which misstated his residence, denied the partnership and real property transfers, and omitted the stock account liquidation. *Harline,* 912 P.2d at 436.

14

[plaintiff-debtor] acted with fraudulent intent or innocently relied on incompetent attorneys." *Id*. at 443.

With this legal framework in mind, this Court must determine whether the elements of collateral estoppel are presently met to bar Plaintiffs' legal malpractice claims. The first issue for discussion is whether the issue decided in the Bankruptcy Court is identical to the one presented here. The Court finds that it is. The Bankruptcy Court made the determination that it was Plaintiff Roach's conduct, and not that of her attorney, that precipitated the Bankruptcy Court's decision to deny her discharge. As alleged in Plaintiffs' complaint, the Bankruptcy Court explicitly found: "any reliance on Attorney Verterano's representation that he would have GRL's case dismissed was not done in good faith and therefore, Debtor cannot rely on advice of counsel to negate intent." Compl. [ECF No. 1] at ¶ 24. In the instant case, Plaintiffs seek to attribute the nondischarge to Attorney Verterano's conduct, the same issue already argued to and rejected by the Bankruptcy Court.

Just as the plaintiff in *Harline*, Plaintiffs cannot now seek to prove that something other than Roach's conduct was the proximate cause of her nondischarge. To find otherwise would allow Plaintiffs to relitigate factual issues already resolved by the Bankruptcy Court, namely, whether Plaintiff Roach's reliance on Attorney Verterano was in good faith and whether Plaintiff acted fraudulently or innocently relied on her incompetent attorney. While this Court notes that Plaintiff Roach's conduct is arguably less egregious than the plaintiff-debtor in *Harline*, the fact remains that in both instances, the bankruptcy court made a determination of whether the plaintiffs acted in good faith or with the intent to hinder, delay or defraud their creditors and in fact found that both plaintiffs did. Plaintiffs cannot reargue this issue under the guise of a legal malpractice action which requires causation. Accordingly, we find that the first prong is met, as

the issue sought to be precluded here is the same as that involved in the Bankruptcy Court action.

Additionally, the Court finds that the remaining elements of collateral estoppel are met. There is no dispute that the bankruptcy decision was a final judgment on the merits, as the Bankruptcy Court denied Plaintiff Roach's claim, and her motion to alter the judgment, therefore this element is met. While Plaintiffs argue that Trustee Zebley was not a party to the bankruptcy action and did not have the opportunity to litigate in that action, it is axiomatic that Trustee Zebley, as the trustee of Roach's and GRL's estates, was a party to the bankruptcy action. Additionally, Trustee Zebley filed his own complaint to determine dischargeability, alleging the same misconduct on behalf of Attorney Verterano identified by Plaintiff Roach, but subsequently dismissed his complaint. Accordingly, the Court finds that Trustee Zebley was a party to the bankruptcy action and that both Trustee Zebley and Plaintiff Roach had a full and fair opportunity to extensively litigate the issue of proximate cause in the bankruptcy action and did extensively litigate the same.

Accordingly, this Court finds that Plaintiffs' Complaint is dismissed with prejudice, as amendment would be futile, because Plaintiff is collaterally estopped from relitigating the same issue already decided by the Bankruptcy Court. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (citations omitted). Because the Complaint is dismissed with prejudice on collateral estoppel grounds, this Court need not address Defendants remaining claims in favor of dismissal.

## VI.     CONCLUSION

Based on the foregoing, Defendants' Motion to Dismiss [ECF No. 13] is **GRANTED** and Plaintiffs' Complaint is **DISMISSED WITH PREJUDICE**.

An appropriate Order follows.

Dated: February 17, 2015

                                                By the Court,

                                                <u>/s Robert C. Mitchell</u>
                                                ROBERT C. MITCHELL
                                                United States Magistrate Judge

cc:     Joseph E. Fieschko, Jr., Esquire
         *Counsel for Plaintiffs*

         Charlene S. Seibert, Esquire
         Dennis J. Roman, Esquire
         *Counsel for Defendants*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHELLE ROACH and CHARLES O. ZEBLEY, <br>     Plaintiffs, <br><br>     vs. <br><br> FRANK VERTERANO and VERTERANO & MANOLIS <br>     Defendants. | Civil Action No.: 14-947 <br> Magistrate Judge Robert C. Mitchell |

## O R D E R

AND NOW, this 17th day of February, 2015, after consideration of Defendants Frank Verterano and Verterano & Manolis's Motion to Dismiss or in the Alternative for Summary Judgment [ECF No. 13], along with the attendant briefs and responses,

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss [ECF No. 13] is **GRANTED** and Plaintiffs' Complaint is **DISMISSED WITH PREJUDICE** and the Clerk shall mark the **CASE CLOSED**.

By the Court,

/s Robert C. Mitchell
ROBERT C. MITCHELL
United States Magistrate Judge

cc:      Joseph E. Fieschko, Jr., Esquire
            *Counsel for Plaintiffs*

            Charlene S. Seibert, Esquire
            Dennis J. Roman, Esquire
            *Counsel for Defendants*